UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| TIMOTHY J. MCILWAIN, I,<br><br>Plaintiff,<br><br>v.<br><br>KELLI R. MARVIN,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 3:26-cv-00322-CHB<br><br>**MEMORANDUM OPINION AND ORDER** |

*** *** *** ***

This matter is before the Court on Plaintiff Timothy J. McIlwain, I's Motion to Reconsider, Vacate, or Modify the Court's July 1, 2026, Order ("Motion to Reconsider"), [R. 42], Defendant Kelli R. Marvin's Motion to Dismiss, [R. 44], and Plaintiff's Cross-Motion for Leave to File First Amended Complaint ("Motion to Amend"), [R. 46]. Each of these Motions has been fully briefed and is ripe for the Court's consideration. *See* [R. 43 (Response to Motion to Reconsider)]; [R. 45 (Reply to Motion to Reconsider)]; [R. 46 (Motion to Amend and Response to Motion to Dismiss)]; [R. 47 (Response to Motion to Amend and Reply to Motion to Dismiss)]; [R. 52 (Reply to Motion to Amend)]. For the reasons explained below, the Court will deny each of Plaintiff's Motions and grant Defendant's Motion to Dismiss.

## I. BACKGROUND

### A. Procedural History

The Court is quite familiar with the general background of this litigation, which concerns the fallout of a relationship and subsequent child-custody proceedings between Plaintiff and his former romantic partner, Brooke Berry. *See, e.g.*, *McIlwain v. Dodd* (*Dodd I*), No. 3:21-CV-406-RGJ, 2022 WL 492986, at *1–2 (W.D. Ky. Feb. 17, 2022), *aff'd*, No. 22-5219, 2022 WL 17169006

(6th Cir. Nov. 22, 2022); *McIlwain v. Berry* (*Berry I*), No. 3:23-CV-130-CHB, 2024 WL 4729311, at *1–2 (W.D. Ky. Nov. 8, 2024); *McIlwain v. Berry* (*Berry II*), 3:23-CV-130-CHB, 2025 WL 2200747, at *1–3 (W.D. Ky. Aug. 1, 2025). In this action, Plaintiff has sued Defendant, who served as a court-appointed custodial evaluator in the state-court proceedings between Plaintiff and Berry. *See* [R. 1, pp. 1–3]. The Court recounts the procedural background of this action and then summarizes the factual allegations relevant to this opinion and order.

Plaintiff, proceeding pro se, initiated this action in U.S. District Court for the Middle District of Florida on December 29, 2025, by filing a seven-count Complaint against Defendant. *See id.* at 3–9. The Complaint invokes the diversity jurisdiction of the federal district courts, *id.* at 1–2 (citing 28 U.S.C. § 1332), and raises state-law claims of breach of fiduciary duty (Count 1), intentional infliction of emotional distress (Count 2), common law fraud (Count 3), fraudulent concealment (Count 4), breach of contract (Count 5), breach of the covenant of good faith and fair dealing (Count 6), and unjust enrichment (Count 7), *id.* at 10–19.

While the action was pending in the Middle District of Florida, Defendant filed a Motion to Transfer Venue to this Court and a Motion to Dismiss. [R. 10]. In the Motion to Dismiss, Defendant argued that Plaintiff's claims fail as a matter of law because Defendant is entitled to quasi-judicial immunity under Kentucky law. *Id.* at 9–13. The District Court in Florida granted Defendant's Motion to Transfer Venue and, in doing so, "terminate[d] all pending motions," including Defendant's Motion to Dismiss. [R. 21, p. 5]; *see also* [R. 41, p. 2 (noting that, as a result of the order transferring venue, "Defendant's Motion to Dismiss no longer served as an operative response")].

The action was docketed in this Court on May 4, 2026. [R. 22]. On May 28, Plaintiff moved the Court for authorization to file documents and receive notices through the Court's Case

Management/Electronic Case Files ("CM/ECF") system. [R. 29]. In the motion, Plaintiff asserted that he is a licensed attorney who is familiar with federal practice and with CM/ECF.[1] *Id.* at 1. The Court granted Plaintiff's motion and authorized his use of CM/ECF on June 9. [R. 31].

On June 10, Plaintiff filed a Declaration in Support of Request for Clerk's Entry of Default. [R. 33]. In the Declaration, Plaintiff asserted that the order transferring venue had "terminate[d] all pending motions" and that Defendant had not since filed either an answer or a motion under Federal Rule of Civil Procedure 12. *Id.* at 2. On June 11, Defendant filed a Response in Opposition to the Entry of Default and Motion for Extension of Time to Respond to Plaintiff's Complaint, stating that she had interpreted the order transferring venue as terminating the pending motions only in the Middle District of Florida. [R. 34, pp. 1–2].

On June 17, Plaintiff filed, through the Court's Electronic Document Submission System ("EDSS"), what would have been a timely Reply to his Request for Default and Opposition to Defendant's Motion for Extension of Time. [R. 36]. On June 23, however, the Court entered an order striking that filing for failure to comply with the filing standards in federal court, including legibility requirements. [R. 37]. The Court's order granted Plaintiff leave to refile his Reply, but it also required Plaintiff to file a notice with the Court indicating "whether he has completed the process to e-file via CM/ECF or, alternatively, whether he wishes to solely file via EDSS." *Id.* at 2. Both the refiled Reply and the notice were due by 12:00 p.m. on June 26. *Id.*

On June 25, Plaintiff filed a "Notice of Compliance" with the Court's June 23 order. [R. 38]. In the notice, Plaintiff asserted that "[a]lthough [his] electronic filing registration ha[d] been approved, [he] ha[d] not yet been able to successfully access and utilize the CM/ECF filing system to electronically file documents" and that "if electronic filing access be[came] fully

---

[1] Plaintiff has not been admitted to practice in this Court, but the Court understands that he is, or at least was, licensed to practice in other jurisdictions. *See, e.g.*, *Berry II*, 2025 WL 2200747, at *2–3 & n.2.

operational prior to the Court's deadline, [he] intend[ed] to refile his Reply through CM/ECF." *Id.* at 1. On June 30—four days after the deadline set in the Court's June 23 order—Plaintiff refiled his Reply (in duplicate documents) through CM/ECF. [R. 39]; [R. 40].

On July 1, the Court denied Plaintiff's Request for Clerk's Entry of Default and granted Defendant's Motion for Extension of Time to Respond to Plaintiff's Complaint. [R. 41, p. 5]. In its order, the Court noted that it would not consider Plaintiff's untimely Reply, explaining that "Plaintiff's self-characterization as compliant with the Court's order with respect to his re-filed reply briefs does not render his Reply timely." *Id.* at 1–2 & n.1 (citations omitted). The Court then explained that the order transferring venue had terminated all pending motions and that "Defendant's Motion to Dismiss no longer served as an operative response." *Id.* at 2. Accordingly, the Court ordered the Clerk of Court to terminate Defendant's Motion to Dismiss on this Court's docket, and it permitted Defendant to file a "new" responsive pleading by July 15. *Id.* at 2, 4–5.

On July 2, Plaintiff filed his Motion to Reconsider the Court's order entered on July 1. [R. 42]. In the Motion to Reconsider, Plaintiff requests three principal forms of relief. First, he requests that "the Order be modified to remove any implication that [he] failed to act diligently[] and that [his] Reply be deemed timely filed." *Id.* at 2. Second, Plaintiff requests that the Court's order be modified to prohibit Defendant from filing a "second, pre-answer Rule 12(b)(6) motion." *Id.* at 3–4. Finally, Plaintiff requests an order directing the Clerk of Court to correct Plaintiff's mailing address on the docket and to "activate" email notifications for CM/ECF filings. *Id.* at 4–5. Defendant responded to the Motion on July 10, [R. 43], and Plaintiff replied on July 23, [R. 47].

Defendant filed her Motion to Dismiss on July 14, asserting that she is entitled to quasi-judicial immunity under Kentucky law and that several of the claims in Plaintiff's Complaint are

barred by the relevant statute of limitations. [R. 44, pp. 5–8]. In her immunity argument, Defendant cites, among other cases, *Nave v. Feinberg*, 539 S.W.3d 685 (Ky. Ct. App. 2017). [R. 44, pp. 5–7].

Plaintiff filed his Response in Opposition to Defendant's Motion to Dismiss and Motion to Amend on July 28. [R. 46]. In his Response and Motion to Amend, Plaintiff reasserts his argument that Defendant's filing of her Motion to Dismiss is procedurally improper under Rule 12(g)(2). [R. 46, p. 3]. Plaintiff concedes, however, that "*Nave* forecloses any attempt to make evidentiary selection, report omissions, professional conclusions, or other evaluative work actionable" and explains that his proposed first-amended complaint ("FAC") "accordingly removes the fraud, concealment, fiduciary-duty, contract, implied-covenant, unjust-enrichment, and remaining common-law theories"—in other words, each of the claims raised in his initial Complaint. *Id.* at 13; *accord id.* at 2; *see* [R. 1, pp. 10–19]. In place of those original claims, the proposed FAC raises a single claim of negligence per se under Ky. Rev. Stat. § 446.070 for Defendant's alleged violation of Kentucky's mandated-report statute, Ky. Rev. Stat. § 620.030, which requires "[a]ny person who knows or has reasonable cause to believe that a child is . . . abused" to make an immediate report to one of several government authorities. *See* [R. 46-1, pp. 17–19].

On August 7, Defendant filed a Reply to her Motion to Dismiss and Response to Plaintiff's Motion to Amend, arguing that the Court should (1) grant her Motion to Dismiss because Plaintiff has abandoned each of the claims in his initial Complaint, [R. 47, pp. 1–3], and (2) deny Plaintiff's Motion to Amend as futile because his proposed negligence-per-se claim fails as a matter of law, *id.* at 3–6. On August 26, after the deadline to reply had passed, Plaintiff filed a Motion for Leave to File Reply Out of Time, along with a proposed Reply. [R. 48]. With no objection from Defendant, *see* [R. 49], the Court granted Plaintiff's Motion, [R. 51], and Plaintiff's untimely Reply was docketed, [R. 52].

Plaintiff's Motion to Reconsider, [R. 42], Defendant's Motion to Dismiss, [R. 44], and Plaintiff's Motion to Amend, [R. 46], are now fully briefed and ripe for the Court's review.

**B. Factual Allegations**

Because Plaintiff has abandoned each of the claims raised in his initial Complaint, *see* [R. 46, pp. 2, 13]; *infra* Section II.C, the Court summarizes the facts alleged in Plaintiff's proposed FAC, [R. 46-1].

On February 24, 2020, the Kentucky state court presiding over the custody proceedings between Plaintiff and Berry entered an order appointing Defendant, a licensed psychologist, to conduct a custodial evaluation with respect to Plaintiff and Berry's child. *Id.* at 6–8. The order directed Defendant to "gather information, evaluate evidence, form opinions, report or recommend to the family court, and testify" in the custody proceedings. *Id.* at 8.

In late January 2021, Plaintiff "became aware of recordings involving the minor child." *Id.* Between February and April 2021, Plaintiff "supplied Defendant with recordings and related materials and repeatedly asked Defendant to report suspected emotional abuse, coercive questioning, and exploitation of the child to Kentucky authorities." *Id.* The materials provided to Defendant included a recording in which Berry "directly questioned the child—then four years of age or younger, and unclothed—about private-part touching, through direct or suggestive prompts." *Id.* at 8–9. Defendant made no report of abuse to the Kentucky Cabinet for Health and Family Services or any other governmental authority. *Id.* at 9.

In July 2024, Berry pursued emergency protective relief "intended to terminate Plaintiff's contact with the child." *Id.* at 10. At a hearing on the matter in September 2024, Berry testified that Defendant had advised her to seek such relief. *Id.* Defendant had provided that advice to Berry through private communication rather than a recommendation to the Court. *Id.*

Also in September 2024, "Dr. Kamala London issued a written report . . . address[ing] children's event memory, suggestibility, and the reliability risks associated with repeated adult-led questioning." *Id.* at 11. That report was "the event through which [Plaintiff] first acquired an expert basis to understand [t]hat the 2021 recordings" provided a sufficient foundation for "reasonable cause under [Ky. Rev. Stat. §] 620.030." *Id.* at 11–12. On September 17, 2024, Plaintiff "transmitted Dr. London's curriculum vitae and report to Defendant and renewed his written request that Defendant report suspected emotional abuse under [Ky. Rev. Stat. §] 620.030." *Id.* at 11. Defendant made no report of abuse at that time and has made no report since. *Id.* at 11–12.

In September 2025, Plaintiff appeared as counsel in an unrelated custody matter in New Jersey state court. *Id.* at 15. Through those proceedings, Plaintiff acquired a report written by "Professor Benjamin Alexander Hine, . . . reviewing the current peer-reviewed scientific literature on parental alienation." *Id.* at 14. It was not until Plaintiff received Hine's report that "he ha[d] an expert basis to understand that the child's one-sided rejection of him was itself a manifestation of ongoing abuse within the concern of the reporting statute, rather than only a consequence of past questioning." *Id.* at 16.

As a result of Defendant's failure to report, Plaintiff incurred expenses to "document, preserve, and present the . . . suspected conduct through other channels after no made report was made—that is, the cost of pursuing privately what the statute directs the Commonwealth to undertake." *Id.* at 14; *accord id.* at 18.

## II. DISCUSSION

### A. Plaintiff's Motion to Reconsider, [R. 42]

The Court first addresses Plaintiff's Motion to Reconsider the Court's July 1, 2026, order. [R. 42]; *see* [R. 41 (Order)].

Although the Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration, the Sixth Circuit has recognized that "district courts have authority to consider motions for reconsideration of interlocutory orders under federal common law and Rule 54(b)." *Evans v. Novolex Holdings, LLC*, No. 20-CV-098, 2023 WL 4843993, at *2 (E.D. Ky. June 21, 2023) (citing *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)). "That authority allows district courts to grant motions for reconsideration on interlocutory orders 'as justice requires.'" *Id.* (quoting *Rodriguez*, 89 F. App'x at 959). Courts may "find justification for reconsidering interlocutory orders where there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Horn v. City of Covington*, No. 14-CV-073, 2019 WL 2344773, at *7 (E.D. Ky. June 3, 2019) (quoting *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009)).

Here, Plaintiff's Motion to Reconsider requests three forms of relief: (1) a modification to the Court's order that "removes any implication that Plaintiff failed to act diligently" in replying to Defendant's Opposition to Entry of Clerk's Default and that deems Plaintiff's Reply "timely filed,"[2] [R. 42, pp. 2–3]; (2) a modification to the order that prohibits Defendant from filing a Motion to Dismiss under Rule 12(b)(6), *id.* at 3–4; and (3) "an order directing the Clerk to correct Plaintiff's mailing address on the docket and to activate his [CM/ECF] email notifications," *id.* at 4–5. The Court will address those requests in turn.

[2] More precisely, Plaintiff takes issue with language in the Court's order "grant[ing] Defendant an extension to 'answer or otherwise plead,'" because "the phrase 'otherwise plead' could be read to authorize a renewed pre-answer Rule 12(b)(6) motion." [R. 42, p. 3]; *accord id.* at 4. However, the Court's order did not use the phrase "otherwise plead," and it expressly granted Defendant "an extension of time within which to file a responsive pleading, *such as a renewed motion to dismiss*." [R. 41, p. 4 (emphasis added)]. Thus, although the Court is puzzled by Plaintiff's references to the phrase "answer or otherwise plead," the Court understands the substance of Plaintiff's request to be directed at the Court's permitting Defendant to file a Motion to Dismiss under Rule 12(b)(6).

With respect to his first request, Plaintiff asserts that administrative issues prevented him from filing through CM/ECF until June 30 and, thus, from complying with the Court's June 23 order to file his Reply by 12:00 p.m. on June 26. [R. 42, p. 2]; *see* [R. 37 (Order)]. To support that assertion, Plaintiff has filed a declaration, along with several exhibits, purporting to show that he contacted the Clerk's Office several times throughout the week of June 23 and that administrative issues prevented him from filing through CM/ECF until June 30. *See* [R. 42, pp. 2, 7–25].

The Court will deny Plaintiff's first request for two reasons. First, the request is not properly before the Court: In his Reply filed on June 30, [R. 39]; [R. 40], Plaintiff failed to acknowledge—much less justify—the untimeliness of his filing, and he provided the Court with none of the "contemporaneously preserved" exhibits that he now attaches to his Motion to Reconsider, [R. 42, pp. 2]. It is well-established that a motion for reconsideration may not be used to "raise legal arguments that could have been raised before the Court issued its decision," *Adkins v. Kroger Ltd. P'ship I*, No. 18-CV-156, 2018 WL 6613786, at *3 (E.D. Ky. Dec. 17, 2018) (citing *Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 495 (6th Cir. 2012)), or to "introduce new allegations or evidence that could have previously been presented," *Abdofara v. Wayne Cnty. Sheriff's Off.*, No. 24-12017, 2025 WL 3680496, at *2 (E.D. Mich. Dec. 18, 2025) (citing *Dassault Systèmes, SA v. Childress*, 828 F. App'x 229, 237 (6th Cir. 2020)). Thus, the Court will disregard the exhibits attached to Plaintiff's Motion to Reconsider, each of which could have been provided to the Court in Plaintiff's Reply or another filing ahead of the June 30 deadline. Moreover, even if the Court were to consider Plaintiff's exhibits and accept his representations about the CM/ECF issues, there was nothing preventing Plaintiff from timely filing his Reply through EDSS; indeed, Plaintiff's filing of his "Notice of Compliance" on June 25, [R. 38], indicates that his access to EDSS was not impaired by any kind of administrative issue. Accordingly, the Court will deny

Plaintiff's request to deem his Reply timely or to otherwise modify the July 1 order with respect to Plaintiff's filing of his Reply.

In his second request, Plaintiff asks the Court to modify its July 1 order to prohibit Defendant from filing a "second, pre-answer Rule 12(b)(6) motion." [R. 42, pp. 3-4]. Specifically, Plaintiff argues that because Defendant filed a motion to dismiss "directed to venue" in the Middle District of Florida, Rule 12(g)(2) prohibits her from "rais[ing] omitted Rule 12 defenses [in] a successive pre-answer motion." *Id.* at 3. Plaintiff concedes that Defendant's immunity defense is not waived, but he argues that it may now be raised only in an answer, a motion for judgment on the pleadings under Rule 12(c), or at trial. *Id.* (citing Fed. R. Civ. P. 12(h)(2)).

The Court will deny Plaintiff's request for several reasons. As an initial matter, Plaintiff appears to either misinterpret or misstate the record: Although a defendant may move to dismiss for improper venue under Rule 12(b)(3), Defendant's motion in the Middle District of Florida made clear that Defendant "moves to transfer this cause to the District Court for the Western District of Kentucky pursuant to 28 U.S.C. § 1404, and also moves to dismiss this action for failure to state a cause of action pursuant to Rule 12(b)(6), Fed. R. Civ. P., based on immunity." [R. 10, p. 14]; *accord id.* at 1–3. Thus, Plaintiff is incorrect to suggest that Defendant's initial motion to dismiss was "directed to venue" and that her immunity defense was "omitted." [R. 42, p. 3]. Moreover, and more importantly, the order transferring venue to this Court "terminate[d] all pending motions," [R. 21, p. 5], including Defendant's initial motion to dismiss, *see* [R. 41, pp. 2, 5 (noting that, as a result of the order transferring venue, "Defendant's Motion to Dismiss no longer served as an operative response," and directing the Clerk to terminate that motion on this Court's docket)]. Thus, Defendant's filing in the Middle District of Florida is null and void, and her Motion to Dismiss in this Court is not a "second" or "successive" motion at all. *Cf. Glob. Dimensions, LLC*

*v. Tackett*, No. 23-CV-168, 2024 WL 477628, at *5 (E.D.N.C. Feb. 7, 2024) ("[O]nce a party withdraws a motion, it is as if the motion has never been filed."). Finally, even if Defendant's Motion to Dismiss in this Court was technically improper under Rule 12(g)(2), the Court would exercise its discretion to address the merits of Defendant's immunity defense as a matter of judicial economy. *See, e.g.*, *Slush Puppie Ltd. v. ICEE Co.*, 792 F. Supp. 3d 834, 851 (S.D. Ohio 2025) (proceeding to the merits of a procedurally improper Rule 12(b)(6) motion because, otherwise, there was "no doubt a Rule 12(c) motion would [have] immediately follow[ed][,] . . . further burden[ing] an already-congested case docket"); *Briscoe v. NTVB Media Inc.*, No. 22-CV-10352, 2023 WL 2950623, at *5 (E.D. Mich. Mar. 3, 2023) (noting that although the Sixth Circuit has not addressed this issue, "other Circuit Courts have not strictly applied Rule 12(g) where the waived defense could be raised later under Rule 12(c)"), *report and recommendation adopted in relevant part*, No. 22-10352, 2023 WL 6315998 (E.D. Mich. Sep. 28, 2023). Accordingly, the Court will deny Plaintiff's second request to modify its July 1 order, and the Court concludes that Defendant's Motion to Dismiss is properly before the Court.

In his third and final request, Plaintiff seeks "an order directing the Clerk to correct Plaintiff's mailing address on the docket and to activate his [CM/ECF] email notifications." [R. 42, pp. 4–5]. This request is wholly beyond the scope of the Court's July 1 order and, thus, is not the proper subject of a motion to reconsider. *See, e.g.*, *Adkins*, 2018 WL 6613786, at *3; *Abdofara*, 2025 WL 3680496, at *2. In any event, the docket record currently reflects the mailing address provided by Plaintiff in his Motion to Reconsider, *see* [R. 42, p. 4], and a court order is not required to activate Plaintiff's email notifications, especially given that Plaintiff has apparently not

contacted any court administrators about this issue.[3] Accordingly, the Court will deny Plaintiff's third request for relief and, thus, deny Plaintiff's Motion to Reconsider in full.

**B. Plaintiff's Motion to Amend, [R. 46]**

Because Plaintiff's Motion to Amend would, if granted, render moot Defendant's Motion to Dismiss, the Court next addresses the Motion to Amend. *See, e.g.*, *Dodd I*, 2022 WL 492986, at *2 (citing *Gallaher & Assocs., Inc. v. Emerald TC, LLC*, No. 08-CV-459, 2010 WL 670078, at *1 (E.D. Tenn. Feb. 19, 2010)). Plaintiff argues that the Motion should be granted because his Motion was "prompt" and his proposed FAC would "narrow[] rather than expand[] the case." [R. 46, pp. 17–18]. Defendant, in response, argues that the Motion should be denied as futile. [R. 47, p. 3]. Specifically, Defendant asserts that she is entitled to absolute quasi-judicial immunity on the negligence per se claim raised in Plaintiff's proposed FAC and that, even if she were not, the proposed FAC fails to state a claim because Plaintiff is not within the class of persons that Kentucky's mandated-report statute is designed to protect. *Id.* at 4–6. Plaintiff, in anticipation of and reply to those arguments, asserts that Defendant is not entitled to immunity because she acted beyond the scope of her appointment by "privately" advising Berry to seek emergency protective relief and argues that parents are within the class of persons protected by the mandated-report statute. [R. 46, pp. 1–2, 5–7, 11–13]; [R. 52, pp. 3–6, 8–9]. The Court will conclude that Defendant is entitled to immunity and, thus, will not address the parties' arguments about the application of Kentucky's negligence per se law to the mandated-report statute.

"Federal Rule of Civil Procedure 15(a) states that leave to amend a pleading shall be freely given 'when justice so requires.'" *Moss v. United States*, 323 F.3d 445, 476 (6th Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). However, the Court "may deny leave to amend if the proposed

[3] The Court's CM/ECF help desk is available at 1-866-822-8305.

amendment would be futile." *Berry I*, 2024 WL 4729311, at *4 (quoting *Moss*, 323 F.3d at 476). A proposed amendment is futile if the complaint, as amended, "would not survive a motion to dismiss." *Dodd II*, 2022 WL 17169006, at *3 (citing *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014)); *accord Berry I*, 2024 WL 4729311, at *4 ("Futility of amendment is simply defined as an amendment to the complaint that would not survive a [Rule] 12(b) motion to dismiss." (alterations omitted) (quoting *500 Assocs., Inc. v. Vt. Am. Corp.*, 496 F. App'x 589, 593 (6th Cir. 2012))). The Court will conclude that Plaintiff's proposed FAC could not withstand a motion to dismiss, and it will therefore deny Plaintiff's Motion to Amend.

A complaint will be dismissed under Rule 12(b)(6) if it "fails to state a claim upon which relief can be granted." *Dodd I*, 2022 WL 492986, at *2 (alterations omitted) (quoting Fed. R. Civ. P. 12(b)(6)). In evaluating whether a complaint can withstand a motion to dismiss, "courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party." *Id.* (citing *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)). However, a complaint still "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Berry I*, 2024 WL 4729311, at *4 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, a complaint will be dismissed "if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Dodd I*, 2022 WL 492986, at *3 (quoting *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014)). Relevant here, a complaint may be dismissed based on official immunity when the defendant's entitlement to immunity is "apparent from the face of the complaint." *Sember v. Booz Allen Hamilton Eng'g Servs., LLC*, No. 16-CV-445, 2017 WL 3314652, at *2 (S.D. Ohio

Aug. 3, 2017) (quoting *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1115 (W.D. Mich. 1996)).

Plaintiff's proposed FAC raises a single claim under Kentucky state law: Plaintiff asserts that Defendant, by failing to report Berry's "emotional abuse" of the child, violated Kentucky's mandated-report law, Ky. Rev. Stat. § 620.030, and that Plaintiff may thus maintain a claim under Kentucky's negligence per se law, Ky. Rev. Stat. § 446.070. [R. 46-1, pp. 17–19]. Accordingly, the Court will apply Kentucky law to determine whether Defendant is entitled to immunity. *See, e.g.*, *Pappas v. Sidles*, No. 09-CV-47, 2010 WL 2889657, at *3 (E.D. Ky. July 21, 2010) ("State law determines whether a government official is entitled to immunity from a state law claim." (citing *Haynes v. Marshall,* 887 F.2d 700, 704 (6th Cir. 1989))).

In applying state law, the Court must "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Generation Changers Church v. Church Mut. Ins. Co.*, 168 F.4th 354, 365 (6th Cir. 2026) (quoting *Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 320 (6th Cir. 2025)). "Absent a definitive decision by a relevant court of last resort, 'the court must anticipate through an educated guess how the relevant state's highest court would rule.'" *Id.* (quoting *Speerly*, 143 F.4th at 320). However, the Court's analysis may be informed by the decisions of the state's intermediate appellate court, and, indeed, the Court "should not disregard the decisions of [that] court[] unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (quoting *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999)). The Court first addresses quasi-judicial immunity and then addresses whether the proposed FAC states a negligence per se claim upon which relief can be granted.

Under Kentucky law, "Absolute immunity against suits for money damages is 'well established' for judges, and such immunity has also been extended to non-judicial officers

performing 'quasi-judicial' duties." *Gambrel v. Croushore ex rel. Villarreal*, 638 S.W.3d 452, 456 (Ky. Ct. App. 2021) (quoting *Sangster v. Ky. Bd. of Med. Licensure*, 454 S.W.3d 854, 858 (Ky. Ct. App. 2014)). Kentucky extends quasi-judicial immunity "to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.* (quoting *Sangster*, 454 S.W.3d at 858); *accord Breiner v. Ledford*, No. 2020-CA-0327, 2021 WL 840356, at *2 (Ky. Ct. App. Mar. 5, 2021); *see, e.g.*, *Browne v. Poole*, 680 S.W.3d 810, 812–14 (Ky. 2023) (holding that a defendant tasked by the state supreme court with administering the bar examination was entitled to quasi-judicial immunity because she acted "in obedience to duties imposed upon her by [the court]"); *Horn ex rel. Horn v. Commonwealth*, 916 S.W.2d 173, 174, 176 (Ky. 1995) (holding that a court designated worker was entitled to quasi-judicial immunity related to her oversight of a juvenile offender because she "was acting within the scope of her employment and under the direction of a judge of the court").

The Kentucky Supreme Court has made clear that (1) an official's entitlement to quasi-judicial immunity depends on the "totality" of the official's "function," and (2) courts should not engage in "hair splitting" to determine whether a particular act was within the scope of the official's quasi-judicial duties. *See Horn*, 916 S.W.2d at 176. In *Horn*, for example, the court held that a court designated worker ("CDW") was entitled to quasi-judicial immunity when the parents of a juvenile offender sued the CDW for "failing to take reasonable steps to ensure the [juvenile's] safety" after the CDW accompanied the juvenile to a detention center in which he was to be incarcerated. *Id.* at 174, 176. Rejecting the parents' argument that "the CDW [had been] acting outside the scope of employment when she accompanied the juvenile to the detention center because . . . her purpose in making the trip was to get a glimpse of this new facility," the court explained that because "[the CDW] would not have been allowed access to the detention center

were she not employed as a court designated worker," the specific "happenstance of her being in the car with [the juvenile]" was irrelevant to the question of immunity. *Id.* at 176. Instead, because the CDW had been acting generally "within the scope of her employment and under the direction of a judge of the court," the court held that she was immune from suit. *Id.*; *see also, e.g.*, *Breiner*, 2021 WL 840356, at *3 (concluding that a CDW was immune from a defamation suit because the CDW would not have been permitted to attend the meeting at which he made the allegedly defamatory statements "[had] he not [been] employed as a court designated worker").

Although the Kentucky Supreme Court has not yet addressed whether court-appointed custodial evaluators are entitled to quasi-judicial immunity, the Kentucky Court of Appeals has held on several occasions that they are. *See Nave*, 539 S.W.3d at 690–91; *Feinberg v. Keeton*, 493 S.W.3d 841, 842 (Ky. Ct. App. 2016); *J.S. v. Berla*, 456 S.W.3d 19, 24 (Ky. Ct. App. 2015); *Stone v. Glass*, 35 S.W.3d 827, 830 (Ky. Ct. App. 2000). In those cases, the court has reasoned that "a court-appointed psychologist performing a custodial evaluation acts as a fact-finder for the court, and is an integral part of the judicial process, as much, if not more so than the [CDW] in *Horn*." *Nave*, 539 S.W.3d at 691 (quoting *Stone*, 35 S.W.3d at 830); *see also Feinberg*, 493 S.W.3d at 842 (explaining that if custodial evaluators were subject to suit, they would be "much less willing to serve the court in such a capacity" and "less likely to offer the disinterested, objective opinion the court seeks in making such an appointment" (quoting *Stone*, 35 S.W.3d at 830)). Moreover, the court in *Nave* held specifically that a custodial evaluator was immune from claims alleging that the evaluator had, among other things, failed to make a report of child abuse in violation of Ky. Rev. Stat. § 620.030.[4] *See Nave*, 539 S.W.3d at 686, 691.

[4] Plaintiff notes that in *Nave*, the plaintiff alleged a violation of Ky. Rev. Stat. § 620.030 to support her claims of breach of contract, professional malpractice, and negligence, and not as a predicate to liability under the negligence per se law, Ky. Rev. Stat. § 446.070. [R. 52, p. 3]; *see Nave*, 539 S.W.3d at 686. However, Plaintiff makes no attempt to explain why that distinction would make a difference for the purposes of Defendant's immunity. Here, as in *Nave*,

Plaintiff does not dispute that court-appointed custodial evaluators are generally entitled to quasi-judicial immunity, but he argues that Defendant is not entitled to immunity in this case because she acted beyond the scope of her court appointment by engaging in private communications with Berry and "ask[ing] [her] to initiate a separate emergency protective proceeding." [R. 52, pp. 3–4]; *accord id.* at 5–6; [R. 46, pp. 1–2, 5–7, 12–13]. Defendant, in response, asserts that Plaintiff's theory would require the Court to engage in just the kind of "hair splitting" proscribed by the court in *Horn*. [R. 47, pp. 4–5]. For the reasons explained below, the Court agrees with Defendant and concludes that she is entitled to absolute immunity on Plaintiff's claim of negligence per se for failure to report.

As an initial matter, the Court has little doubt that the Kentucky Supreme Court would, if presented with the issue, hold that court-appointed custodial evaluators are generally entitled to quasi-judicial immunity. As the Kentucky Court of Appeals has persuasively explained, custodial evaluators act only upon a court appointment, and the functions of a custodial evaluator—helping the court find facts and ultimately make a custody determination—are plainly quasi-judicial. *See Nave*, 539 S.W.3d at 690–91; *Keeton*, 493 S.W.3d at 842; *Berla*, 456 S.W.3d at 24; *Stone*, 35 S.W.3d at 829–30. Thus, to an even greater degree than the court designated worker discussed in *Horn*, custodial evaluators function as arms of the court and constitute integral parts of the judicial process. *See Horn*, 916 S.W.3d at 176; *see also, e.g.*, *Diehl v. Danuloff*, 618 N.W.2d 83, 88 & n.2 (Mich. Ct. App. 2000) ("With virtual uniformity, courts in other jurisdictions have granted quasi-judicial immunity to [court-appointed custody evaluators]." (collecting cases)); *Delcourt v. Silverman*, 919 S.W.2d 777, 783 (Tex. App. 1996) ("Many courts recognize that psychiatrists and psychologists performing court-ordered custody evaluations perform a judicial

---

the question of immunity turns on the role of the court-appointed custodial evaluator as a functional arm of the court, and not on the specific ways in which the plaintiff has pursued his or her claims. *See, e.g.*, *Horn*, 916 S.W.2d at 176.

function and enjoy absolute immunity." (collecting cases)); *Arsan v. Keller*, 784 F. App'x 900, 908 (6th Cir. 2019) (explaining that, for reasons similar to those outlined above, court-appointed guardians ad litem are entitled to quasi-judicial immunity under federal law). Accordingly, and because Plaintiff identifies no reason to believe that the Kentucky Supreme Court would depart from the well-reasoned decisions of the Kentucky Court of Appeals, the Court concludes that custodial evaluators, like Defendant, are generally entitled to absolute immunity under Kentucky law. *See, e.g.*, *Generation Changers Church*, 168 F.4th at 365.

Having determined that custodial evaluators are generally entitled to quasi-judicial immunity, the Court next addresses Plaintiff's argument that Defendant, by exceeding the scope of court appointment and advising Berry to initiate emergency protective proceedings, effectively forfeited her entitlement to immunity on Plaintiff's failure-to-report claim. [R. 46, pp. 1–2, 5–7; 12–13]; [R. 46-1, pp. 7–8, 10–11, 17–19]; [R. 52, pp. 3–6]. The Court is not persuaded by Plaintiff's argument, and it will thus conclude that Defendant is entitled to immunity.

To begin, the Court notes that it accepts, in determining whether Plaintiff's proposed FAC could withstand a motion to dismiss, Plaintiff's allegation that Defendant exceeded the scope of her appointment by providing "private" advice to Berry. *See* [R. 46-1, p. 7–8, 10–11, 18]; *Dodd I*, 2022 WL 492986, at *2. For at least two related reasons, however, the Court is not persuaded that Defendant's communications with Berry—even if they exceeded the scope of Defendant's appointment—deprived Defendant of immunity on Plaintiff's failure-to-report claim.

First, Plaintiff makes no allegations or arguments that might connect Defendant's private communications with Berry to Defendant's alleged failure to report. Indeed, Plaintiff alleges that Defendant learned all of the facts suggestive of emotional abuse through her review of the record in the custody proceedings, through her conversations with Plaintiff, and through the materials

provided to her by Plaintiff. *See* [R. 46-1, pp. 8–9, 11–13, 17–18 ("Plaintiff alleges that the information supplied to Defendant, considered together with her claimed training, the nature and volume of the recordings, Plaintiff's repeated reporting requests, her statements concerning mandatory-reporter status, and the September 2024 expert materials, gave Defendant knowledge or reasonable cause to believe that the child was being subjected to emotional abuse or neglect.")]. In other words, Defendant's "extra-judicial" communications with Berry are wholly irrelevant to the omission for which Plaintiff seeks to hold Defendant liable: According to Plaintiff's allegations, Defendant's duty to report would have existed regardless of whether she had engaged in any private communications with Berry. Thus, even if Defendant exceeded the scope of her appointment by engaging in those communications—and even if Defendant would not be immune to claims arising from those communications—Plaintiff's failure-to-report claim simply has nothing to do with those communications. *See, e.g.*, *Horn*, 916 S.W.2d at 176 (reiterating that quasi-judicial officials are immune from claims related to actions they took in the scope of their court-appointed roles); *cf. Dugger v. Off 2nd, Inc.*, 612 S.W.2d 756, 757–59 (Ky. Ct. App. 1980) (concluding that a prosecutor was not immune from claims of wrongful arrest and false imprisonment where the alleged tortious conduct—the arrest and imprisonment—were directly related to actions taken by the prosecutor in excess of his lawful authority—signing and issuing an arrest warrant in the name of a judge).

Moreover, even if Plaintiff could somehow connect Defendant's communications with Berry to Defendant's failure to report, the Court could conclude that Defendant is not immune only by engaging in the kind of "hair splitting" that is plainly proscribed by Kentucky law. *See Horn*, 916 S.W.2d at 176. Indeed, like the CDW in *Horn*—who was involved in overseeing the juvenile's detention and in accompanying the juvenile to the detention center only by virtue of her

employment as a court designated worker—Defendant in this case learned of the alleged abuse only through her appointment as a custodial evaluator. *See id.* Put simply, if Defendant had not been appointed as a custodial evaluator, she never would have learned any of the facts that, according to Plaintiff, gave rise to her duty to report. Thus, as in *Horn*—where the immunity determination turned on "the totality of [the CDW's] function as a court designated worker . . . rather than the happenstance of her being in the car with [the juvenile]"—the Court's immunity determination in this case must be governed by the "totality" of Defendant's role as a custodial evaluator rather than the "happenstance" of any incidental communications with Berry. *See id.* Accordingly, the Court concludes that under Kentucky law, Defendant is entitled to absolute quasi-judicial immunity on Plaintiff's claim of negligence per se and, thus, that Plaintiff's proposed FAC fails to state a claim upon which relief can be granted. *See, e.g.*, *Sember*, 2017 WL 3314652, at *2.

Because Plaintiff's proposed FAC fails to state a claim upon which relief can be granted, it could not withstand a motion to dismiss, and the Court will deny Plaintiff's Motion to Amend as futile. *See, e.g.*, *Moss*, 323 F.3d at 476; *Williams*, 771 F.3d at 949.

**C. Defendant's Motion to Dismiss, [R. 44]**

Having determined that it will deny Plaintiff's Motion to Amend, the Court will now address Defendant's Motion to Dismiss. [R. 44]. As with the negligence per se claim raised in Plaintiff's proposed FAC, Defendant argues that she is entitled to quasi-judicial immunity on each of the claims raised in initial Plaintiff's Complaint, again relying upon *Nave*, 539 S.W.3d at 690–91, among other cases. [R. 44, pp. 5–7]. Plaintiff concedes in his Response that *Nave*'s discussion of quasi-judicial immunity "forecloses" the claims raised in his initial Complaint, and he thus "abandon[s] those theories" in his proposed FAC.[5] [R. 46, p. 2]; *accord id.* at 13.

[5] Plaintiff makes only one argument in opposition to the Motion to Dismiss: the argument raised in his Motion to Reconsider that the Motion to Dismiss is procedurally improper under Rule 12(g)(2). [R. 46, p. 3]. As explained above,

Accordingly, Defendant argues in her Reply, each of the claims in Plaintiff's initial Complaint should be dismissed as abandoned. [R. 47, pp. 1–3]. The Court agrees with Defendant and will therefore grant her Motion to Dismiss.

"When a plaintiff fails to respond to a motion to dismiss on a certain claim, that claim is considered abandoned." *Beychok v. Baffert*, No. 24-CV-100, 2024 WL 5112755, at *21 (W.D. Ky. Dec. 13, 2024) (citing *Bradley v. Jefferson Cnty. Pub. Schs.*, 598 F. Supp. 3d 552, 567 (W.D. Ky. 2022)); *see also, e.g.*, *Pippin v. JPMorgan Chase Bank, N.A.*, No. 24-CV-552, 2024 WL 5055190, at *4 (N.D. Ohio Dec. 10, 2024) ("It is well settled that a plaintiff abandons a claim when he or she fails to oppose a motion to dismiss that claim." (citing *Doe v. Bredesen*, 507 F.3d 998, 1007–08 (6th Cir. 2007))); *McIlwain v. Dodd* (*Dodd II*), No. 22-5219, 2022 WL 17169006, at *3 (6th Cir. Nov. 22, 2022) ("The district court properly dismissed as abandoned . . . claims that were neither addressed in McIlwain's response to the motion to dismiss nor mentioned in the proposed amended complaint.").

Here, Plaintiff makes no attempt to dispute that the claims raised in his initial Complaint are foreclosed by quasi-judicial immunity; indeed, he expressly concedes as much in his Response, "abandon[ing]" his initial claims and arguing only that Defendant is not entitled to immunity on the new negligence per se claim raised in his proposed FAC. *See* [R. 46, pp. 2, 13]. The Court will thus conclude that Plaintiff's claims have been abandoned and grant Defendant's Motion to Dismiss. *See, e.g.*, *Beychok*, 2024 WL 5112755, at *21; *Pippin*, 2024 WL 5055190, at *4; *Dodd II*, 2022 WL 17169006, at *3; *Bredesen*, 507 F.3d at 1007–08.[6]

---

however, the Court concludes that Defendant's Motion to Dismiss was properly filed and is properly before the Court. *See supra* Section II.A.

[6] Even if Plaintiff had not abandoned each of the claims in his initial Complaint, the Court would, for reasons similar to those outlined above, find that Defendant is entitled to quasi-judicial immunity on those claims and thus grant Defendant's Motion to Dismiss. Indeed, as Plaintiff concedes, *see* [R. 46, pp. 2, 13], each of the claims in the initial

## III. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff Timothy J. McIlwain, I's Motion to Reconsider, Vacate, or Modify the Court's July 1, 2026, Order, **[R. 42]**, is **DENIED**.
2. Defendant Kelli R. Marvin's Motion to Dismiss, **[R. 44]**, is **GRANTED**.
3. Plaintiff's Motion for Leave to File First Amended Complaint, **[R. 46]**, is **DENIED**.
4. A separate judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

This the 19th day of October, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

---

Complaint targets conduct that fell plainly within the scope of Defendant's role as a court-appointed custodial evaluator, *see* [R. 1, pp. 10–19].